**MAMMOTH MEDICAL, INC., Appellant,**

v.

**Hon. Kimberly BUNNELL (Judge, Fayette Circuit Court), et al., Appellees.**

No. 2008–SC–000048–MR.

Supreme Court of Kentucky.

Sept. 18, 2008.

As Modified to Designate Opinion for Publication Sept. 26, 2008.

---

Charles A. Goodman, III, Garmon & Goodman, Glasgow, Joe B. Campbell, Campbell Law Office, Bowling Green, John Lewis Tate, Stites & Harbison, PLLC, Louisville, KY, Counsel for Appellant.

James E. Keller, Gess Mattingly & Atchison, PSC, Lexington, Kenneth Gregory Haynes, Wyatt, Tarrant & Combs, LLP, Rania Marie Basha, Sara Christine Veeneman, Virginia Hamilton Snell, Wyatt, Tarrant & Combs, LLP, Kimberly Nell Bunnell, Fayette County Circuit Court Judge, Lexington, KY, Counsel for Appellee.

Richard Wayne Hay, Sarah Hay Knight, Somerset, KY, Amicus Curiae.

Opinion of the Court by Justice SCOTT.

The Court of Appeals denied CR 76.36 relief to Mammoth Medical, Inc. ("Mammoth"), a medical supply distributor who petitioned for a writ of prohibition, seeking dismissal of a declaratory judgment action brought against it by the law firm Stoll Keenon Ogden PLLC ("SKO"). The writ was filed after SKO took preemptive action by seeking a declaration of non-liability for Mammoth's potential legal malpractice claim, asserting lack of causation as a defense. Mammoth appeals the denial of the writ as a matter of right pursuant to CR 76.36(7).

The principal issue before us is whether a Kentucky circuit court can adjudicate in a declaratory judgment action a potential tort defendant's defenses to an allegedly injured party's prospective negligence claim. We hold that the circuit court had jurisdiction but, under these circumstances, declaratory judgment is nonetheless not a proper procedure to seek a determination of nonliability for past conduct. Therefore, we conclude that the Fayette Circuit Court, although having jurisdiction, acted erroneously in allowing the declaratory judgment action to proceed, and that the Court of Appeals erred when it denied the writ.

## I. Facts

Joe Alexander, a former Mammoth salesman, voluntarily resigned his employment in February 2005 and shortly thereafter, allegedly sold information about Mammoth to at least one medical equipment manufacturer. Mammoth subsequently retained an attorney, who was not associated with SKO, to represent it against Alexander. After receiving a letter accusing him of misusing confidential information, Alexander contacted an attorney at SKO in May 2005.

Unbeknownst to that attorney, other attorneys at SKO had been performing legal services for Mammoth on unrelated business matters since 2004. The SKO attorney performed a conflicts check, which failed to reveal that his law firm represented Mammoth. He then agreed to represent Alexander in his dispute with Mammoth.

Thereafter, from May 2005 until February 2006, SKO performed legal services for Alexander on certain matters, including his dispute with Mammoth. Included among those services were multiple letters from the SKO attorney on SKO firm letterhead to attorneys representing Mammoth in its claims against Alexander.

Mammoth learned of the conflicting representations in early 2006. SKO received, from a law firm representing Mammoth, a letter advising SKO of Mammoth's position that SKO should cease representing Alexander due to its representation of Mammoth on other matters. SKO ceased its representation of both Mammoth and Alexander by February 2006, when an investigation confirmed the conflicting representations.

## II.  Procedural History

On February 10, 2006, Mammoth brought an action for injunctive relief and damages in the *Barren Circuit Court* against Alexander. Alexander filed a bankruptcy petition two months later. Mammoth successfully moved to dismiss or convert the bankruptcy action into an adversary proceeding. In response, Alexander asserted as a defense the legal advice he received from SKO.

Mammoth did not join SKO as a defendant when it sued Alexander. Mammoth nonetheless demanded that SKO reimburse it for the financial losses allegedly suffered as a result of Alexander's conduct.

On May 1, 2006, Mammoth and SKO entered into a tolling agreement. The agreement gave the parties time to pursue negotiations about SKO's potential liability to Mammoth for advising Alexander. Tolling applied only to Mammoth's alleged claims; it did not bar SKO from taking steps to protect its interests.

The parties' communications in the following months progressed to scheduling a formal mediation on November 13, 2006. On November 3, 2006, however, SKO informed Mammoth that it would not participate in the mediation and, that same day, filed a complaint for declaratory relief in the *Fayette Circuit Court*. SKO's complaint was a preemptive action seeking summary adjudication of liability and damages in a potential legal malpractice lawsuit by Mammoth.

On November 20, 2006, Mammoth filed a motion to dismiss, arguing that declaratory judgment is not the proper method for resolving a legal malpractice claim, and the Fayette Circuit Court is not the correct forum for adjudicating the parties' dispute. The circuit court initially granted the motion to dismiss, but later, in response to SKO's motion to reconsider, vacated the dismissal order and reinstated SKO's action. The circuit court subsequently denied Mammoth's motion to reconsider and motion to dismiss for improper venue and lack of personal jurisdiction.

On July 2, 2007, Mammoth filed an original proceeding in the Court of Appeals pursuant to CR 76.36 requesting a writ of prohibition to direct the dismissal of the Fayette Circuit Court action filed by SKO. The Court of Appeals, in a 2–1 decision, denied the writ on December 23, 2007.

## III.  Analysis

The issue in this case, as framed by this Court, is as follows: Can the Fayette Circuit Court adjudicate in a declaratory judgment action SKO's defenses to Mammoth's prospective legal malpractice claim? Mammoth argues that the circuit court is acting without subject matter jurisdiction because actions for declaratory relief are designed *to determine prospective rights and duties, not liability for past conduct.* Mammoth further contends that venue is improper in Fayette County and that the circuit court does not have personal jurisdiction over it.

Mammoth asserts that a writ should issue because it has no adequate remedy by appeal if SKO is permitted to go forward with its declaratory judgment action in circuit court, as Mammoth has more claims against SKO than those outlined in SKO's complaint for declaratory relief. In the alternative, Mammoth asserts this is a special case where allowing the declaratory judgment action to proceed would be detrimental to the orderly administration of justice.

SKO responds that the practical outcome of the writ proceeding will only determine whether venue lies in Fayette County or Barren County. SKO asserts that a writ should not issue because Mammoth has an adequate remedy by appeal.

*See Fritsch v. Caudill,* 146 S.W.3d 926, 928 (Ky.2004). SKO believes that Mammoth has not shown irreparable harm because it has the same rights in the Fayette County action as it enjoys in its Barren County action.

SKO further contends that the circuit court acted properly within its jurisdiction pursuant to KRS 418.045. SKO asserts that the Kentucky Declaratory Judgment Act ("DJA") is unique and not an adoption of either the Uniform DJA or the Federal DJA. SKO points out that, unlike the Federal DJA or any other state law, the Kentucky DJA does not preclude it from seeking declaratory relief under these circumstances.

## A. Standard of Review

█ Relief by way of a writ of prohibition is an "extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 808 (Ky. 2004) (*quoting Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961)). This Court has divided writ cases into two classes, which are distinguished by "whether the inferior court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction'), or (2) acting erroneously within its jurisdiction." *Id.* The second class of writs includes a subclass for "certain special cases." *Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 616 (Ky.2005). Mammoth claims that the Fayette Circuit Court either is acting outside its jurisdiction or, alternatively, that this is a special case involving misuse of the Kentucky DJA.

█ The proper standard of review of a decision to deny a writ of prohibition depends on the class of writ case. *Grange Mut. Ins. Co.,* 151 S.W.3d at 810. De novo review is generally the proper standard, where the lower court is alleged to be acting outside its jurisdiction, because jurisdiction is generally only a question of law, *where the alleged error invokes the "certain special cases" exception,* or where the error involves a question of law. *Id.* (emphasis added.) Thus, we review the denial of the writ de novo, giving no deference to the judgment below.

## B. The Kentucky Declaratory Judgment Act

The Kentucky DJA is codified in KRS Chapter 418. The Kentucky DJA is intended to be remedial in nature, and its purpose is to make courts more serviceable to the people by way of settling controversies and affording relief from uncertainty and insecurity with respect to rights, duties and relations. KRS 418.080. We liberally interpret and administer the Kentucky DJA to accomplish its broad purpose. *Id.*

█ KRS 418.040 provides that in any action in a court of record wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief, and the court may make a binding judgment. As a rule, the court has broad discretion to grant declaratory relief. The party seeking relief must show that an actual, justiciable controversy exists; proceedings for a declaratory judgment must not merely seek advisory answers to abstract questions. *Axton v. Goodman,* 205 Ky. 382, 265 S.W. 806 (1924).

In general, the scope of matters to which a declaratory judgment may be rendered is broad. KRS 418.045 contains an extensive list of claims for which declaratory relief is available. Any person interested under a deed, will or other instrument of writing, or in a contract, written or parol; or whose rights are affected by

statute, municipal ordinance, or other government regulation; or who is concerned with any title to property, office, status or relation; or who as fiduciary or beneficiary is interested in any estate, provided always that an actual controversy exists with respect thereto, may apply for and secure a declaration of his rights or duties, even though no consequential or other relief be asked. KRS 418.045 bears the title "Persons who may obtain declaration of rights; enumeration not exclusive". In other words, this section of the Kentucky DJA, enumerating certain specific situations, is not exclusive as to other situations.

■ Although the scope of the Kentucky DJA is liberal and wide, there are, however, limits. Declaratory judgment does not fit every occasion and does not replace the existing system of remedies and actions. For example, an action for a declaratory judgment cannot be instituted to secure a determination of substantive rights involved in a pending suit. *Gibbs v. Tyree*, 287 Ky. 656, 154 S.W.2d 732, 733(1941).

Moreover, the Court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances. KRS 418.065. Similar discretion can be found in the Federal DJA, 28 U.S.C.A. § 2201(a), and in the Uniform DJA: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Unif. Declaratory Judgments Act § 6 (1922).

The phrase "enumeration not exclusive" in the title of KRS 418.045 also appears in Section 5 of the Uniform DJA. The Kentucky DJA contains an additional sentence that does not appear in the Uniform DJA: "The enumeration herein contained does not exclude other instances wherein a declaratory judgment may be prayed and granted under KRS 418.040, whether such other instance be of a similar or different character to those so enumerated." KRS 418.045. The sentence merely clarifies the principle, as found in the title of KRS 418.045, that this section of the Kentucky DJA, enumerating certain specific situations, is not exclusive as to other situations. It, however, by itself, does not expand the scope of the Kentucky DJA beyond that of other states that have adopted the Uniform DJA.

## C. Negligence Cases

■ In many states, including ours, although there appears to be no Kentucky case directly on point, "[d]eclaratory relief is not ordinarily available in respect of allegations of past negligence and damage, nor will an action for declaratory relief generally be available to a prospective defendant in a negligence action seeking to obtain a declaration of nonliability as to the prospective plaintiff." 22A Am.Jur.2d *Declaratory Judgments* § 56. It has been observed that:

> To reverse the roles of the parties to a negligence action would jeopardize those procedures the law has traditionally provided to injured parties seeking judicial relief. An injured party has a right to choose the forum and time, if at all, to assert a claim. To permit a prospective defendant to attempt to obtain a declaration of nonliability would force an injured party to litigate a claim that party may not have wanted to litigate at a time which might be inconvenient or

which might precede the party's determination of the full extent of damages. *Id.*

Nonetheless, in allowing the declaratory judgment action to proceed, the circuit court relied on two Kentucky cases: *American Continental Ins. Co. v. Weber & Rose, P.S.C.,* 997 S.W.2d 12 (Ky.App.1998), and *Bank One, Kentucky, N.A. v. Murphy,* 52 S.W.3d 540 (Ky.2001). Although we acknowledge that these cases weigh in favor of allowing the declaratory judgment action, neither case is on point and they appear to be the exception rather than the rule.

*Weber & Rose* involved an insurance coverage dispute. 997 S.W.2d at 12. There, a jury awarded $2.9 million in damages to the plaintiff, Gordon, against the insured, NKC, in a negligence action. *Id.* The law firm, Weber & Rose, represented the insured. *Id.* at 13. The verdict amount dipped into excess coverage limits. *Id.* After the trial in the underlying action, the excess carrier, ACIC, denied liability and filed a declaratory judgment action against the insured, seeking a ruling that it was not liable on the excess policy for the judgment rendered against the insured. *Id.*

Thereafter, the law firm intervened in the action, seeking declaratory relief adjudicating that it could not be found liable to the excess insurer for malpractice in connection with its representation of the insured. *Id.* The circuit court granted the law firm a summary judgment on the ground that it could not be adjudged liable to the excess insurer for malpractice, and the Court of Appeals affirmed. *Id.* at 14.

In *Bank One,* this Court considered whether an employer commits an impermissible retaliatory act under the Kentucky Civil Rights Act by filing a declaratory judgment action seeking a determination that it is entitled to prevail on its affirmative defenses before a potential plaintiff files a lawsuit and while settlement negotiations are ostensibly ongoing. 52 S.W.3d at 541. The employee contended that filing a suit while settlement negotiations were ongoing amounted to a violation of KRS 344.280 and was retaliatory in nature. *Id.* at 543. We disagreed. In holding that the action was not retaliatory, we stated that "[i]t would be unwise for this Court to introduce limitations upon the rights of parties to seek declaratory relief." *Id.* at 546.

It is not surprising that, besides *Weber & Rose* and *Bank One,* which are not directly on point, there is little precedent for declaratory relief under the present circumstances. However, a Texas case, *Averitt v. PriceWaterhouseCoopers L.L.P.,* 89 S.W.3d 330 (Tex.App.2002), appears to address essentially the same issue we are faced with here. The issue in *Averitt* was whether an accounting firm could use a declaratory judgment action to obtain a declaration of non-liability for an alleged breach of oral contract for accounting services pertaining to the formation of a trust. *Id.* at 331. The client moved for summary judgment on the ground that the accounting firm was improperly using the Texas DJA to determine potential tort liability. *Id.* at 333. The trial court denied the client's motion for summary judgment, but the Texas Court of Appeals reversed and held that the accounting firm was improperly using its suit for declaratory judgment to determine potential tort liability. *Id.* at 336.

In addition to *Averitt,* Mammoth cites to decisions by appellate courts in Arkansas, California, Idaho, Illinois, Indiana, Kansas,

Maryland, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, and Wisconsin recognizing that declaratory relief is not intended as a vehicle for adjudicating allegations of past negligence or damage. *Bankers & Shippers Ins. Co. of New York v. Kildow,* 9 Ark.App. 86, 654 S.W.2d 600 (1983); *Watson v. Sansone,* 19 Cal.App.3d 1, 96 Cal.Rptr. 387 (1971); *Ennis v. Casey,* 72 Idaho 181, 238 P.2d 435 (1951); *Howlett v. Scott,* 69 Ill.2d 135, 13 Ill.Dec. 9, 370 N.E.2d 1036 (1977); *Volkswagenwerk, A.G. v. Watson,* 181 Ind.App. 155, 390 N.E.2d 1082 (1979); *State Farm Fire and Cas. Co. v. Finney,* 244 Kan. 545, 770 P.2d 460 (1989); *Polakoff v. Hampton,* 148 Md.App. 13, 810 A.2d 1029 (2002); *Ditzler v. Spee,* 288 Minn. 314, 180 N.W.2d 178 (1970); *Campbell 66 Exp., Inc. v. Thermo King of Springfield, Inc.,* 563 S.W.2d 776 (Mo.Ct.App.1978); *Ryder Truck Rental, Inc. v. Rollins,* 246 Neb. 250, 518 N.W.2d 124 (1994); *Donadio v. Cunningham,* 58 N.J. 309, 277 A.2d 375 (1971); *Salomon Bros., Inc. v. West Virginia State Bd. of Investments,* 152 Misc.2d 289, 575 N.Y.S.2d 993 (N.Y.Sup.Ct.1990); *Coca–Cola Bottling Co. Consol. v. Durham Coca–Cola Bottling Co.,* 141 N.C.App. 569, 541 S.E.2d 157 (2000); *Baker v. Miller,* 33 Ohio App.2d 248, 294 N.E.2d 901 (1972); *Hyman–Michaels Co. v. Hampton,* 471 P.2d 463 (Okla.1970); *Osram Sylvania Products, Inc. v. Comsup Commodities, Inc.,* 845 A.2d 846 (Pa.Super.Ct.2004); *Tennessee Farmers Mut. Ins. Co. v. Hammond,* 200 Tenn. 106, 290 S.W.2d 860 (1956); *Roberts v. Badger State Auto Auction,* 604 N.W.2d 33 (Wis.Ct.App.1999). Federal law is consistent with this position. *See, e.g., Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165 (7th Cir.1969) (the Federal DJA was not intended to enable a prospective defendant in a negligence action to obtain a declaration of non-liability). We find these authorities persuasive.

## D. Writ of Prohibition

■ Mammoth claims that it is entitled to a writ under either the no-jurisdiction class or the "certain special cases" exception. We point out that the circuit court has jurisdiction over declaratory judgment actions generally, thus making the first class of writ cases inapplicable here. We believe, however, that the issue raised in this case concerning the limitations of the Kentucky DJA is sufficiently important that we may address the merits under the special cases exception.

■ Therefore, under these facts, the requirements for a writ are as follows:

A writ of prohibition *may* be granted upon a showing ... that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). In certain special cases this Court will entertain a petition for prohibition on a claim that the lower court was acting erroneously within its jurisdiction in the absence of a showing of irreparable injury, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration. *Bender,* 343 S.W.2d at 801. These requirements are met here.

First, as discussed in the preceding section, the circuit court acted erroneously in allowing the declaratory judgment action to proceed. *See* 22A Am.Jur.2d *Declaratory Judgments* § 56 (an action for declara-

tory relief will generally not be available to a prospective defendant in a negligence action seeking to obtain a declaration of non-liability as to the prospective plaintiff).

Mammoth's remedy by appeal is inadequate because Mammoth would have to adjudicate its tort claims against SKO based on the lawsuit brought by SKO, with issues framed by SKO, in a forum chosen by SKO. We do not believe that the outcome of the writ proceeding will only determine venue, which was waived by Mammoth. *See Fritsch*, 146 S.W.3d at 928 (a writ cannot issue for a venue challenge, which must proceed by appeal from a final judgment). Further, a counterclaim cannot cure the prejudice that may result from allowing the declaratory judgment action to proceed.

The orderly administration of justice requires that Mammoth, as the allegedly injured party, be allowed to decide in the first instance whether, when, and where to bring an action against SKO in tort for damages. Although this case involves allegations of legal malpractice, the issue before us also applies to all tort claims. Permitting SKO's declaratory judgment action to proceed could potentially open the courthouse doors to preemptive actions by prospective tort defendants seeking forum-favorable, summary disposition of not-yet-filed tort claims, or lead to multiple claims in separate courts involving similar subject matter. As such, we believe that this is a special case, deserving of an extraordinary remedy.

## IV.  Conclusion

For the foregoing reasons, we reverse the Court of Appeals-denial of the writ of prohibition and remand for entry of a writ ordering that the declaratory judgment ac-

tion in the Fayette Circuit Court be dismissed. In so holding, we express our disapproval of potential defendants initiating declaratory judgment actions for the purpose of establishing their non-liability with respect to unsued claims, except under narrow circumstances. However, our holding today in no way precludes liability carriers from litigating by declaratory judgment questions of coverage.

MINTON, C.J.; CUNNINGHAM, SCHRODER and SCOTT, JJ., concur.

ABRAMSON, J., concurs by separate opinion, with VENTERS, J., joining that opinion.

NOBLE, J., not sitting.

Concurring Opinion by Justice ABRAMSON.

I agree with the majority but write separately to emphasize that neither *American Continental Ins. Co. v. Weber & Rose. P.S.C.*, 997 S.W.2d 12 (Ky.App.1998) nor *Bank One, Kentucky, N.A. v. Murphy*, 52 S.W.3d 540 (Ky.2001) really addresses the issue before this Court. Consequently, we are confronted with an issue of first impression, the disposition of which has far-reaching consequences for the conduct of litigation in the Commonwealth.

In *Weber & Rose*, an excess insurance carrier filed a declaratory judgment action against its insured, seeking to avoid coverage of a jury verdict on the grounds that the particular event was not covered and the insured had failed to give timely notice. When the insurance carrier suggested that the law firm which had defended the insured in the underlying litigation had mishandled the case, the law firm intervened seeking a declaration that, as a matter of law, it owed no duty to the excess

insurance carrier. At least two factors distinguish that case from the one before this Court. First, the case began as a declaratory judgment action filed by a carrier for purposes of determining coverage, a common basis for declaratory relief. Second, when the law firm intervened to assert its own declaratory judgment claim, it was proceeding in the forum that had already been chosen by the party who would be seeking affirmative relief against it in the form of damages for past conduct.

A federal declaratory judgment action was at issue in *Bank One, supra.* In dismissing a request for a declaration that Bank One was not liable to an employee for sexual harassment, the federal district court criticized the bank for rushing to the federal courthouse to preempt the employee from choosing when and where to file her lawsuit. The Kentucky Supreme Court did not address the propriety of the preemptive filing but simply considered whether initiating the federal declaratory judgment action constituted retaliatory conduct by the bank in violation of KRS 344.280.

Murphy contends that filing a suit while settlement negotiations were ongoing amounts to a violation of KRS 344.280 and is retaliatory in nature. We disagree. While it may amount to bad manners or may appear to some to be unprofessional, such conduct does not constitute a violation of the statute nor is it tortious. Declaratory judgment actions are widely utilized to establish certain fundamental rights in ongoing disputes. KRS 418.045 contains an extensive list of subjects and transactions upon which declaratory relief is available. It would be unwise for this Court to introduce limitations upon the rights of parties to seek declaratory re-

lief. Accordingly, the trial court's denial of Murphy's motion to amend her complaint to add a retaliation claim was proper.

52 S.W.3d at 546. The language employed by the Court, while indicative of a generally expansive approach to the availability of declaratory judgment relief, is clearly dicta for any issue beyond the one that was immediately before the Court, *i.e.* whether the federal action constituted retaliation under KRS 344.280.

The issue of the availability of the Kentucky declaratory judgment statute as a vehicle for asserting non-liability for allegedly negligent conduct is squarely before us for the first time in this case. Neither the remedial nature of KRS Chapter 418 nor the last sentence of KRS 418.045 regarding the use of declaratory judgments in "other instances" not specifically enumerated renders our declaratory judgment statute fundamentally different from its federal counterpart or from other states' statutes. Accordingly, I concur with the majority's conclusion that a declaratory judgment action is unavailable in these circumstances and the orderly administration of justice supports issuance of the requested writ.

VENTERS, J., joins.