**James SULLIVAN, Appellant,**

v.

**EQUITY FIRE AND CASUALTY COMPANY, Appellee.**

No. 82058.

Court of Appeals of Oklahoma, Division 3.

Jan. 10, 1995.

J. David Cawthon, The West Law Firm, Shawnee, for appellant.

Micky Walsh, Mark E. Bialick, Elizabeth J. Sloan, Durbin, Larimore & Bialick, Oklahoma City, for appellee.

## *OPINION*

GARRETT, Chief Judge:

Appellant, James Sullivan, was injured when an object was thrown from an automobile driven by Gary Davis. The object, which struck Appellant's arm and fractured it, was thrown by Virgil Owens, a passenger in Davis' car. Neither Davis nor Owens, both minors, are parties to this appeal. Appellant sued Davis for damages resulting from negligent conduct and later amended his petition to include Owens as a defendant. Davis was dismissed without prejudice on September 4, 1992. The trial court entered judgment by default for Appellant against Owens on September 29, 1992. Appellant garnisheed Appellee, Equity Fire and Casualty Company, Davis' automobile liability insurer. Appellee answered and denied liability on the basis of a lack of coverage under Davis' policy for intentional acts. The trial court sustained Appellee's answer and held it was not liable.

The case was submitted to the trial court on briefs and the following Joint Stipulation of Facts:

1. Gary Wayne Davis was the named insured under Equity Fire and Casualty Company automobile insurance policy No. N3542251, covering the time period from April 1, 1991, through July 1, 1991. . . .

2. On or about June 14, 1991, while Mr. Davis was operating his vehicle in Shawnee, Oklahoma, a vehicle driven by Mr. James W. Sullivan began following the Davis vehicle.

3. Virgil Owens' status as a passenger in the Davis vehicle was with the permission of Gary Davis.

4. After leaving the parking lot, Mr. Davis encountered Mr. Sullivan's vehicle

again on Louisa Street, near the intersection with Burns Street. Mr. Sullivan was out of the vehicle at the time.

5. When the Davis vehicle encountered Mr. Sullivan the second time, a B–B pistol was thrown from the Davis vehicle by Virgil Owens.

6. Virgil Owens would testify that he intended to throw the B–B gun in question.

7. At all times pertinent hereto, Virgil Owens was a passenger in the automobile owned and operated by Davis.

8. The object thrown from the Davis vehicle struck Mr. Sullivan, causing injury.

9. At all times pertinent hereto, the above-mentioned policy was in full force and effect.

10. James W. Sullivan filed a lawsuit against Mr. Davis and Mr. Owens as a result of the incident of June 14, 1991. Mr. Davis was later dismissed from the suit. A default judgment was entered against Mr. Owens, in favor of Mr. Sullivan, alleging negligence.

11. Based on this judgment, Mr. Sullivan caused a garnishment to be issued against Equity Fire and Casualty Company, asserting that payment of the judgment should be made under the policy issued to Mr. Davis. Equity Fire and Casualty Company has objected to the garnishment and has denied liability.

12. Any and all pleadings and depositions taken in connection with this case can be used and referred to herein.

■ Appellant contends the trial court erred in holding Appellee was not liable because the primary issue of coverage, damages resulting from negligent conduct, had already been adjudicated. Appellee did not assert the defense that Owens, as Davis' passenger, was not a covered person under the policy.

Appellant contends his judgment against Owens answered the question of whether the act was intentional or negligent. He con-

tends his petition and amended petition alleged only negligent acts were committed, with no reference to intentional acts. Therefore, he contends, the judgment rendered is conclusive as to the nature of the acts. We agree with the trial court.

Appellee was not a party to the underlying action at the time judgment was entered against Owens. It, therefore, had no opportunity to raise the issue of the intentional acts exclusion under its policy. Additionally, as this Court decided in *Hilderbrand v. Gray and Mid–Continent Casualty Company*, 866 P.2d 447 (Okl.App.1993), Appellee's and Owens' interests were obviously antagonistic, and were not in privity with each other in the former action. See *Hilderbrand*, 866 P.2d at 450, which contain issues similar to the instant case:

> [I]ndeed, in some critical respects, the interests of Gray [the insured] and Mid–Continent [the insurer] were antagonistic. For example, the insurer's pecuniary interests would doubtless have been served if Gray defended the main action by claiming his acts were intentional, because Mid–Continent might thereby have been relieved by its policy exclusion from indemnifying Gray against the tort judgment. But Gray (and, according to the applicable rules of ethical conduct, his insurer-retained attorney) were obliged to defend Gray's interests, including preservation of whatever rights of insurance which they thought reasonably available to Gray.

A garnishment action does not alter or enlarge the rights of the parties. In the instant case, Appellant, the judgment creditor, cannot acquire through his judgment any greater rights against Appellee than those possessed by the insured, Owens. See *Hilderbrand*, 866 P.2d at 450.

Appellant also cites *Stucky v. Long*, 783 P.2d 500 (Okl.App.1989), for authority that whether an act is negligent or intentional should be determined from the injured party's perspective. First, the act causing the injury was obviously intentional. In ad-

dition, that case is distinguishable from the instant case, as it dealt with uninsured motorist (UM) coverage, rather than liability coverage. In UM insurance, the insured is also the injured person. See *Willard v. Kelley*, 803 P.2d 1124 (Okl.1990), a UM case, in which the Supreme Court discussed an insurer's liability for "accidents" or "accidental" injuries, distinguishing between UM and liability insurance:

> The judicial approach of gauging the character of an injurious event from the insured's standpoint is not new to American jurisprudence. In cases where recovery was sought on a policy insuring against accidental death or injury, the terms "accident" or "accidental" have long been held to describe an occurrence which is unexpected, unintended and unforeseen *in the eyes of the insured.* (Emphasis in original). That is to say, even if an insured becomes the victim of an intentional act, the nature of the injury is nonetheless viewed as accidental, *so long as the harm was not the reasonably foreseeable result of the insured's own wilful act or misconduct.* (Emphasis added). In the context of life and accident insurance this principle is also well established in Oklahoma.
>
> While public liability insurance generally does not protect the insured *who intentionally inflicts harm upon another,* (Emphasis in original), UM and medical payments coverages *afford indemnity to the insured for harm caused by another....* (Emphasis in original).

In the instant case, one of the stipulations presented to the court is that Owens would testify he intended to throw the gun. Under the automobile liability insurance policy, Owens is the insured. Therefore, the intentional acts exclusion under the policy issued by Appellee was a proper defense to the garnishment, and the trial court correctly sustained Appellee's claim of non-liability.

AFFIRMED.

HUNTER and ADAMS, JJ., concur.